UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-60011-CR-ROSENBAUM/SNOW

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ANDRE D. BARBARY, *et al.*,

    Defendants.

_____/

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### *I. Introduction*

This matter is before the Court upon Defendant Tamika Jasper-Barbary's Motion to Suppress Conversations Recorded Pursuant to a Title III Wiretap on Telephone Number (786) 367-9026 [D.E. 220] and Defendant Andre Barbary's Motion to Suppress Conversations Recorded Pursuant to a Title III Wiretap on Telephone Number (786) 367-9026 [D.E. 247], which were previously referred to the Honorable Lurana S. Snow for proposed findings and a recommended disposition. Defendants Scott Barnes and Nathaniel Holt, Jr., filed motions to adopt Defendant Andre Barbary's Motion to Suppress, which were granted. [D.E. 248, 263, 253, 279]. Magistrate Judge Snow held an evidentiary hearing on the Motions and filed a Report and Recommendation [D.E. 344] recommending that the Court deny the Motions to Suppress. Jasper-Barbary then filed Objections to the Report and Recommendation [D.E. 377] and the Government filed a Response to Jasper-Barbary's Objections [D.E. 385]. Defendants Scott Barnes and Nathaniel Holt, Jr., also filed Objections to the Report and Recommendation. [D.E. 381, 387].

The Court has conducted a *de novo* review of the Motions to Suppress, all supporting and opposing filings, Magistrate Judge Snow's Report and Recommendation, Jasper-Barbary's Objections, Holt's Objections, Barnes's Objections, the Government's Responses, and the entire record. In addition, the Court has listened to a recording of the evidentiary hearing held on the Motions. After careful consideration, the Court now overrules Jasper-Barbary, Holt, and Barnes's Objections and adopts Magistrate Judge Snow's Report and Recommendation.

## II.  Discussion

**A.     Barnes and Holt's Objections: Necessity**

Barnes and Holt object to Magistrate Judge Snow's conclusion that the wiretap applications complied with the necessity requirement of 18 U.S.C. §§ 2518(1)(c) and (3)(c).[1] Both defendants contend that the wiretaps in this case were unnecessary because law enforcement made several seizures, had information from reliable sources, and had probable cause to arrest Barbary prior to applying for a wiretap. *See* D.E. 381 at ¶ 5 and D.E. 387 at ¶ 5. According to Barnes and Holt, law enforcement had enough information to apply for and obtain a search warrant for Barbary's residence before seeking a wiretap. Put simply, the two Defendants contend that the circumstances did not warrant the "extraordinary investigative measure" of intercepting telephone communications.

After a *de novo* review of the record, the Court now overrules Barnes and Holt's objections. For the reasons set forth by DEA Special Agent Amber Sargent ("Agent Sargent") in her Affidavit in Support of Application for Interception of Wire and Electronic Communications [D.E. 220-1], Judge Middlebrooks in the Order Authorizing the Interception of Wire and Electronic

---

[1] The Objections cite to 28 U.S.C. 2518(1)(c) and (3)(c), but the Court assumes that this citation was a scrivenor's error.

Communications [D.E. 220-2], and Judge Snow in her Report and Recommendation [D.E. 344], the Court agrees that the necessity requirement of 18 U.S.C. §§ 2518(1)(c) and (3)(c) has been satisfied.

As noted by Judge Snow, before entering an order authorizing the interception, the judge must determine on the basis of the facts set forth in the application that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). Courts have held that "a comprehensive exhaustion of all possible investigative techniques is not necessary before applying for a wiretap." *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1214 (11th Cir. 2010); *See also United States v. Alonso*, 740 F.2d 862, 868 (11th Cir. 1984), *United States v. Cifarelli*, 589 F.2d 180, 183 (5th Cir. 1979).

Here, the affidavit of Agent Sargent addressed the techniques suggested by Defendants, along with the reasons why they failed or were likely to fail to achieve the objectives of the investigation. As Judge Snow emphasized in her Report and Recommendation, confidential informants were used but had been unable to make controlled drug purchases from the Barbary organization. Physical surveillance had limited success because the targets used measures of evasion and counter-surveillance. And, although defense counsel suggests that search warrants should have been sought in this case prior to obtaining a wiretap, one search warrant had been executed, but there was insufficient probable cause to search the residences of several members of the organization. Additionally, Agent Sargent opined that if the Government had obtained other search warrants (such as for Barbary), other members of the organization would temporarily suspend the operation, conceal or destroy evidence, or otherwise prevent discovery of evidence. *See* D.E. 220-1 at ¶ 239.

During the evidentiary hearing and elsewhere, defense counsel suggested that trash pulls could have also been utilized instead of a wiretap. But the Government explained that trash pulls

were difficult because law enforcement would be identified as outsiders in the neighborhoods where the targets reside. Such trash pulls (and other techniques) would also have not identified all of the organization's members or the large-scale interstate nature of the organization. Finally, as set forth in Agent Sargent's affidavit, Barbary had video surveillance outside of his home and, thus, trash pulls would have alerted him that law enforcement was investigating him.

Accordingly, the Court agrees with Judge Snow that the wiretap application adequately met the necessity requirement because it described the other investigative procedures that had been tried and failed and it explained why they appeared to be unlikely to succeed or too dangerous, as required by 28 U.S.C. § 2518. Because the Court agrees with Judge Snow's analysis, Defendants Barnes and Holt's Objections are overruled, and the intercepted conversations will not be suppressed based on failure to comply with the necessity requirement of 28 U.S.C. §§ 2518(1)(c) and (3)(c).

**B.     Jasper-Barbary's Objections:  Minimization**

Jasper-Barbary's objections pertain to two conversations with her husband, Defendant Barbary, on September 23, 2011, that were recorded pursuant to the wiretap Order entered by Judge Middlebrooks.[2] According to Jasper-Barbary, Agent Sargent failed to properly "minimize" these telephone conversations, as required by 28 U.S.C. § 2518(5). More specifically, Jasper-Barbary contends that Agent Sargent (1) continued to monitor and spot-monitor the conversations after she had determined that they were not pertinent to her investigation; and (2) minimized the conversations for such a brief period, and spot-monitored for so long without additional minimization, so as to render meaningless the "minimization" requirement. *See* D.E. 377 at 2.

---

[2] For ease of reference, the Court will refer to call #17596 at "Call #1" and call # 17832 as "Call #2."

During the evidentiary hearing, Agent Sargent explained how each of the calls were minimized. More specifically, she stated that her practice was to listen to the intercepted call for two minutes. If no pertinent information was discussed, she would minimize the call for thirty seconds and then "spot check" the call in intervals of thirty seconds. If, during the thirty-second spot checks, pertinent information was being discussed, she would continue to listen to the call.

With respect to Call #1, Agent Sargent testified that she monitored the call between Jasper-Barbary and her husband for 1 minute and 55 seconds and then minimized the call for 30 seconds. Agent Sargent then re-intercepted the call and contends that the call became pertinent within the 30-second spot-check period (*i.e.*, at the 24-second mark), thus enabling her to continue monitoring. According to Agent Sargent, Jasper-Barbary's discussion of sweating in bed the night before was pertinent to the investigation. Thus, Agent Sargent listened further to the conversation, which later contained a discussion regarding the activity of "gangstas" in Opa Locka and Overtown. Jasper-Barbary, however, claims that the portion of the conversation regarding sweating in bed was not pertinent to the investigation, so Agent Sargent should have minimized the call.

With respect to Call #2, Agent Sargent testified that she monitored the call between Jasper-Barbary and her husband for two minutes and then minimized the call for thirty seconds. Agent Sargent then re-intercepted the call and contends that the call became pertinent within five seconds, again enabling her to continue listening to the conversation. More specifically, during the five-second mark of the spot-check, Jasper-Barbary and her husband discussed a high-speed chase on the highway, whether one of Barbary's "main men" were safe, and Barbary's receipt of a call to "bond the dude out." Jasper-Barbary argues that the procedure of listening for two minutes and then minimizing for thirty seconds, followed by a spot monitor for thirty seconds is not reasonable. And,

5

because it is not reasonable, she contends, the conversation should be suppressed. Ultimately, Jasper-Barbary asserts that one factual finding and one legal conclusion made by Judge Snow are pertinent to the minimization requirement.

      **a.     Judge Snow's Factual Finding**

After hearing the testimony of Agent Sargent, Judge Snow determined with respect to Call #1 that "Agent Sargent reasonably believed that Jasper-Barbary's reference to sweating the night before was a reference to her nervousness rather than to a malfunctioning air conditioner." *See* D.E. 344 at 11. In this regard, Judge Snow accepted Agent Sargent's explanation for why she continued to "spot monitor" the conversation after the thirty-second interval had concluded. Jasper-Barbary asserts that this factual finding is critical because "it provides the only justification for SA Sargent to have monitored the portion of [Call #1] during which Jasper-Barbary mentions that '[t]hey was supposed to be doing something in Opa-Locka and Overtown.'" *See* D.E. 377 at 4.

The Court has listened to the evidentiary hearing and agrees with Judge Snow that Agent Sargent's testimony was fully credible and that her testimony was not impeached. The Court also agrees with Judge Snow that Agent Sargent reasonably believed that Jasper-Barbary's reference to sweating in bed the night before the phone call was a reference to her nervousness about a Drug Enforcement Administration ("DEA") raid in Opa-Locka and Overtown rather than to hot conditions due to a broken air-conditioner, as now suggested by Barbary-Jasper. Critical to this finding is the timing of the call. As Judge Snow noted, Agent Sargent knew that an undercover agent had just relayed information the previous day to Jasper-Barbary regarding a raid that was to take place in Opa-Locka and Overtown. The raid could have potentially adversely affected the interests of Jasper-Barbary and her husband and, hence, could have made Jasper-Barbary nervous to the point that she

was sweating profusely while attempting to sleep.

According to Jasper-Barbary, it was not reasonable for Agent Sargent to believe that Jasper-Barbary was complaining to her husband about sweating in her bed the previous night because she was worried about the raid for a number of reasons: (1) Jasper-Barbary and her husband live in Hollywood, Florida, not Opa-Locka or Overtown; (2) Barbary was in Atlantic City at the time of the conversation; (3) the conversation took place the morning after Jasper-Barbary was informed by a DEA agent of the raid the previous afternoon, but Jasper-Barbary did not, in the interim, mention the raid to Barbary; and (4) the DEA conducts raids in South Florida virtually every day, so there was nothing unusual about a DEA raid taking place in Opa-Locka or Overtown.

Although Jasper-Barbary's argument that she was simply complaining to her husband about a broken air-conditioner may, in a vacuum, have some appeal, the circumstances surrounding the conversation support the conclusion that Agent Sargent reasonably believed the reference to sweating at night was due to Jasper-Barbary's nervousness about the fictitious DEA raid. First, an undercover agent provided Jasper-Barbary with the tip that the DEA raid would occur in Opa-Locka and Overtown just the afternoon before the relevant telephone call. Second, during the evidentiary hearing, Agent Sargent testified that Barbary owned property in the area where the raid was supposed to take place. Third, Agent Sargent also testified that members of the alleged conspiracy were associated with the neighborhoods that were supposed to be raided.

The fact that Barbary and his wife did not live in Opa-Locka or Overtown does not render less credible Agent Sargent's testimony that she believed that Jasper-Barbary's sweating was due to nervousness. If Jasper-Barbary knew of Barbary's alleged drug-trafficking activity, Jasper-Barbary had reason to be nervous because Barbary owned property in the area, and members of the

7

alleged conspiracy were associated with these neighborhoods. For these same reasons, the fact that Barbary was out of town at the time of the fictitious raid does not make unreasonable Agent Sargent's belief that Jasper-Barbary was nervous about the raid. And, even if Jasper-Barbary had not previously communicated with her husband about the raid, this fact alone does not negate the finding that it was reasonable for Agent Sargent to believe that Jasper-Barbary was nervous about the raid. To the contrary, Agent Sargent had just minimized the call for thirty seconds and had not heard what transpired during that time, so she had no way of knowing whether Jasper-Barbary had already told Barbary about the raid. Finally, despite Jasper-Barbary's contention that her voice on the recording of Call #1 does not reveal a sense of fear, the description of how profusely she sweated could fairly be understood to suggest such fear. Indeed, Jasper-Barbary stated that she sweated so much that her tank top was soaked, and her bed was wet.

In short, the Court agrees with Judge Snow's factual finding that Agent Sargent credibly testified that she reasonably believed that Jasper-Barbary's reference to sweating was a reference to her nervousness rather than to a malfunctioning air conditioner. Accordingly, Jasper-Barbary's Objection on this ground is overruled.

### b. Judge Snow's Legal Conclusion

In her Report and Recommendation, Judge Snow set forth the "minimization" procedure described by Agent Sargent as "listening for 2 minutes, then minimizing for 30 seconds, followed by a spot monitor of 30 seconds." *See* D.E. 344 at 10. Judge Snow concluded that the procedure was reasonable and fully compliant with the requirements of § 2518(5). Jasper-Barbary disagrees, arguing that given the fact that Agent Sargent was familiar with Jasper-Barbary and her husband's voices and knew that the majority of conversations between them were not pertinent, Agent Sargent

should have minimized the call before the two-minute mark. Jasper-Barbary also suggests that it was not permissible for agents to minimize the calls for only thirty seconds after listening for a full two minutes.

The Court agrees with Magistrate Judge Snow's legal analysis and finds that the minimization procedure used by the agents in this case was reasonable and compliant with Section 2518(5). This section of the wiretapping statute requiring minimization. It "does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interception of such conversations." *See Scott v. United States*, 436 U.S. 128, 139-140 (1978). Whether the monitors have complied with this requirement depends on the facts and circumstances of each case. *Id.* "A standard of reasonableness is applied to the government's actions regarding electronic interceptions." *De La Cruz Suarez*, 601 F.3d at 1215.

Magistrate Judge Snow cited several binding cases in support of her determination that the minimization procedure was reasonable and compliant with Section 2518. Judge Snow noted that the Eleventh Circuit has held that "conversations lasting less than two minutes are considered too brief 'to identify the caller and characterize the conversation as merely social or possibly tainted.'" *De La Cruz Suarez*, 601 F.3d at 1215. Therefore, Judge Snow found that the two minutes of listening was reasonable.

Judge Snow also found that the thirty-second minimization period was equally reasonable. In support of this determination, Judge Snow pointed out that, according to Agent Sargent, the conversations frequently shifted rapidly from non-pertinent to criminal in nature such that longer minimization periods would have resulted in missed pertinent conversations. Because "the marital

privilege does not protect those conversations made in furtherance of a conspiracy," *United States v. Malekzadeh*, 855 F.2d 1492, 1496 (11th Cir. 1988), Judge Snow further determined that there was no reason that the procedure should not have been followed during conversations between Barbary and Jasper-Barbary.

The Court addresses the marital-privilege issue separately, in ruling on Jasper-Barbary's Appeal of Judge Snow's Order denying her Motion *in Limine* to Exclude Confidential Marital Communications [D.E. 3441]. But, to the extent that Jasper-Barbary suggests that, as a general matter, minimization does not sufficiently protect the marital privilege as it pertains to conversations that are not criminal in nature, she has not cited any cases for this proposition, and the Court is aware of none. Moreover, such a conclusion would effectively preclude the interception of wire communications between a husband and wife, no matter the content of the conversation.

In addition, the Court agrees that the minimization procedure itself was reasonable under the circumstances of this case. In support of her objections, Jasper-Barbary emphasizes that "Judge Snow cites no case law for the proposition that it is permissible for agents to minimize for only thirty seconds after listening for a full two minutes." *See* D.E. 377 at 6. While this is true, Jasper-Barbary has not produced any cases supporting her contention that a thirty-second minimization period is not permissible. Nor is the Court aware of any binding case law contradicting Magistrate Judge Snow's conclusions. Instead, after conducting its own research, the Court found that other courts have approved similar minimization plans, allowing for thirty seconds of minimization. *See United States v. Borrayo-Gutierrez*, 119 F. Supp. 2d 1168 (D. Colo. 2000) (finding plan satisfied minimization requirements of federal wiretap statute where monitors were told to listen for two minutes, disconnect if the call did not appear relevant to the investigation, and spot check every thirty seconds

to determine if the conversation had become relevant); *cf. United States v. Smith*, 909 F.2d 1164 (8th Cir. 1990) (minimization plan included listening for a minute or two and then allowing spot checking every thirty to sixty seconds). Because the procedure of listening for two minutes and spot checking every thirty seconds was reasonable, the Court overrules Jasper-Barbary's objections relating to minimization and adopts the Report and Recommendation.

### III. Conclusion

For the foregoing reasons, the Court agrees with Magistrate Judge Snow's Report and Recommendation. Accordingly, Barnes, Holt, and Jasper-Barbary's Objections are overruled, and it is **ORDERED and ADJUDGED** as follows:

1. Magistrate Judge Snow's Report and Recommendation [D.E. 344] is hereby **AFFIRMED and ADOPTED**;

2. Defendant Tamika Jasper-Barbary's Motion to Suppress Conversations Recorded Pursuant to a Title III Wiretap on Telephone Number (786) 367-9026 [D.E. 220] is **DENIED**.

3. Defendant Andre Barbary's Motion to Suppress Conversations Recorded Pursuant to a Title III Wiretap on Telephone Number (786) 367-9026 [D.E. 247] is **DENIED**.

**DONE AND ORDERED** at Fort Lauderdale Florida, this 11th day of October 2012.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies:
The Honorable Lurana S. Snow
Counsel of Record